UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARKADIUSZ R. NIEDZWIECKI,

                                 DECISION AND ORDER

                         Plaintiff,

                                 18-CV-6410L

                         v.

ANDREW SAUL,
Commissioner of Social Security,

                         Defendant.
_____


Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On December 15, 2016, plaintiff filed an application for a period of disability and disability insurance benefits, alleging an inability to work since October 15, 2008. After that application was denied, plaintiff requested a hearing, which was held on January 8, 2018 via videoconference before Administrative Law Judge ("ALJ") Kenneth Theurer. The ALJ issued an unfavorable decision on January 23, 2018, concluding that plaintiff was not disabled. (Dkt. #6-2 at 9-10). Plaintiff appealed that decision to the Appeals Council, and it became the final decision of the Commissioner when the Appeals Council denied review on April 6, 2018. (Dkt. #6-2 at 1-3). Plaintiff now appeals from that decision.

The plaintiff has moved for judgment remanding the matter for further proceedings (Dkt. #8), and the Commissioner has cross moved (Dkt. #10) for judgment on the pleadings, pursuant to

Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

Here, the ALJ found that the plaintiff had severe impairments, consisting of degenerative disc disease of the lumbar spine, bilateral plantar fasciitis, and a left shoulder rotator cuff syndrome, which did not meet or equal a listed impairment. The ALJ determined that plaintiff – at the time of his alleged disability onset a 32-year-old man with a high school education – retained the RFC to perform light work, except that he can no more than occasionally climb ladders, ropes or scaffolds; can perform only occasional balancing, stooping, kneeling, crouching, crawling, and overhead lifting; and after standing for one hour, requires the ability to sit for up to 5 minutes while remaining on task. (Dkt. #6-2 at 13).

When provided with this RFC at the hearing, vocational exert Michael Smith testified that plaintiff could not return to his past relevant work as a disaster or damage control specialist, but

would be able to perform the representative positions of sales attendant, apparel stock checker, and produce weigher. (Dkt. #6-2 at 18).

### III. The ALJ's Consideration of Medical Opinions by P.A. Hosking

Plaintiff argues that the ALJ erred when he failed to discuss a medical opinion of record from Veterans Administration ("VA") treating physicians' assistant Heather Hosking, who examined plaintiff on March 1, 2010. Ms. Hosking opined that due to pain and stiffness in his feet from plantar fasciitis, plaintiff could stand for 15-30 minutes, and walk for 1-3 miles. (Dkt. #6-9 at 1556-57). Plaintiff argues that if the ALJ had properly weighed that opinion, he would have included more stringent exertional and/or postural limitations in plaintiff's RFC, which in turn would have eroded the number of available occupations.

Initially, the Court notes that the ALJ's decision did consider, and explicitly mention, three other opinions by Ms. Hosking, rendered before and after the March 1, 2010 opinion and situated in the same section of the record. The first, dated January 9, 2009, concluded that plaintiff had no painful motion, swelling, instability or weakness in his feet, and found no limitations in plaintiff's ability to stand or walk. (Dkt. #6-10, at 1646-48). The second, rendered July 11, 2011, found no evidence of foot pain, swelling, instability, weakness or abnormalities, and opined that plaintiff can stand up to one hour and walk for one mile. (Dkt. #6-9, 1484-88). Finally, Ms. Hosking authored an additional opinion on March 17, 2014, which evaluated plaintiff's shoulder and arm function, and found no objective evidence of pain, normal range of motion, normal function, and normal strength. (Dkt. #6-9 at 1287-99, Dkt. #6-10 at 1764-83).

The ALJ gave Ms. Hosking's 2009 and 2011 assessments "great" weight, noting that they were supported by contemporaneous clinical findings and conservative treatment records for plantar fasciitis, but gave "little" weight the 2014 opinion, to the extent that he felt the record

3

supported *greater* limitations with respect to plaintiff's arms and shoulders than those reflected therein.

Initially, it is not clear that the ALJ did, in fact, overlook Ms. Hosking's March 1, 2010 opinion. It is well settled that an ALJ's decision need not "mention . . . every item of testimony presented" or "reconcile explicitly every conflicting shred of medical testimony." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ stated that he had reviewed the record in its entirety, and his decision discusses large swaths of the evidence of record, with several references to portions of "[Ms.] Hosking's multiple C[ompensation] & P[ension] examinations" and assessments. In the context of his decision, the ALJ's discussion of Ms. Hosking's 2009 and 2011 opinions appears to have been an effort to provide representative examples to support his conclusion, stated in the sentence which immediately precedes the discussion, that "the clinical findings from VA examinations are fairly minimal," rather than an exhaustive list of all of the myriad assessments provided by treating sources at the VA over the relevant period which, as the ALJ noted, were "comprehensive and cover[ed] multiple body systems." (Dkt. #6-2 at 16).[1] Thus, the fact that the ALJ did not specifically identify the March 1, 2010 opinion does not indicate that it was overlooked or ignored.

Nonetheless, I find that the ALJ's determination of plaintiff's functional limitations – with or without specific mention of Ms. Hosking's March 1, 2020 opinion – was sufficiently explained, and supported by substantial evidence. In fact, the extent of plaintiff's standing and/or walking

---

[1] Indeed, the record contains numerous other assessments by treatment providers at the VA, including Ms. Hosking, which the ALJ did not individually discuss, but grouped together in noting the "fairly normal" findings reported in "VA examinations." *See e.g.*, Dkt. #6-9 at 1469 (January 31, 2012 assessment from treating physical therapist Daniel Sant, noting limitations in right elbow extension and pronation); Dkt. #6-9 at 1459 (March 1, 2012 C&P assessment by Ms. Hosking noting groin strain, with normal examination findings and no impact on plaintiff's ability to work); Dkt. #6-9 at 1438 (June 6, 2012 assessment by Bonnie Bason, cosigned by Debra Khani-Mevorach, noting normal range of motion and strength in both upper and lower extremities); Dkt. #6-9 at 1395 (March 18, 2013 C&P assessment by Ms. Hosking regarding groin strain, noting that it was fully resolved and posed no limitations, and assessing arm, elbow and wrist range of motion and strength as 5/5, and hip, knee and ankle range of motion and strength as 5/5).

4

limitations were explicitly addressed by other evidence of record, including Ms. Hosking's July 11, 2011 opinion that plaintiff could walk one mile, and plaintiff's testimony at the hearing wherein plaintiff claimed that his abilities to sit, stand, walk and lift were severely compromised. This evidence was discussed in detail, and more dramatic limitations were nonetheless rejected, by the ALJ.

Specifically, the ALJ found that plaintiff's consistently benign examination findings – which included repeated observations of a normal and steady gait, intact coordination, and normal sensation and normal reflexes, as well as Ms. Hosking's January 2009 and July 2011 assessments finding no limitations in standing, and the ability to walk at least 1 mile – did not support any limitations in standing or walking greater than those reflected in his RFC finding (e.g., limitation to light work, requirement to sit for up to 5 minutes after standing for an hour). (Dkt. #6-2 at 15). The ALJ further observed that plaintiff's foot pain had improved with treatment. The improvement was attributable to the use of biomechanical orthotics, which plaintiff was initially prescribed and given in November 2009, 12 weeks prior to the March 1, 2010 plantar fasciitis assessment by Ms. Hosking. (Dkt. #6-9 at 1556-57, 1559-60, 1571-72). Indeed, as the ALJ noted, by the time of Ms. Hosking's July 11, 2011 assessment, plaintiff reported that his plantar fasciitis had no effect on his daily activities. (Dkt. #6-2 at 15; Dkt. #6-9 at 1488).

The ALJ further found that plaintiff's "wide range of activities of daily living" throughout the period under review, including caring for his two children, performing housework, doing laundry, engaging in photography (both as a hobby, and occasionally as a job), playing ping pong, bicycling, snow-shoveling, strawberry picking, taking online courses for a Master's degree in graphic design, and attending job interviews, suggested that plaintiff was "highly functional," and

5

did not support plaintiff's claim of disabling limitations in standing and/or walking. (Dkt. #6-2 at 15).

As such, I find that while the ALJ did not specifically mention Ms. Hosking's March 1, 2010 assessment, it was part of the record that the ALJ stated he had considered, and his decision contains sufficiently numerous and specific references to the evidence of record to substantiate that claim. Assuming *arguendo* that the ALJ's failure to mention the March 1, 2010 assessment was error, the ALJ's opinion addressed and sufficiently explained his reasoning for rejecting the type and extent of the limitations the March 1, 2010 assessment described, based on the evidence of record. Any resultant error is therefore harmless. *See e.g.*, *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010 ("[w]here application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration").

Upon review of the record, I find that the ALJ's determination that plaintiff was not disabled was supported by substantial evidence, and was not the product of reversible legal error.

## CONCLUSION

For the forgoing reasons, I find that ALJ's decision was supported by substantial evidence and was not the product of reversible legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied, the Commissioner's cross motion for judgment on the pleadings

6

(Dkt. #10) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 11, 2020.